# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 3, 2016

LETTER TO COUNSEL

RE:     *Tracey Ann Janes v. Commissioner, Social Security Administration;*
        Civil No. SAG-15-1126

Dear Counsel:

On April 9, 2014, Plaintiff Tracey Ann Janes petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claims. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Plaintiff's reply. (ECF Nos. 13, 16, 17). In addition, I have reviewed the Commissioner's supplemental brief regarding the impact of the Fourth Circuit's recent decision in *Fox v. Colvin*, __ Fed. App'x __, 2015 WL 9204287 (4th Cir. Dec. 17, 2015).[1] (ECF No. 20). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

Ms. Janes filed a claim for Disability Insurance Benefits on September 6, 2011, and a claim for Supplemental Security Income Benefits on September 28, 2011. (Tr. 191-197, 198-206). She alleged a disability onset date of May 30, 2010. (Tr. 191). After her claims were denied initially and upon reconsideration, Ms. Janes filed a request for hearing on May 10, 2012. (Tr. 148). A hearing before an Administrative Law Judge ("ALJ") took place on November 5, 2013. (Tr. 36-88). Following the hearing, the ALJ determined that Ms. Janes was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 7-31). The Appeals Council denied Ms. Janes's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Janes suffered from the severe impairments of bipolar disorder, attention deficit-hyperactivity disorder ("ADHD"), personality disorder, and chronic obstructive pulmonary disease ("COPD"). (Tr. 12). Despite these impairments, the ALJ determined that Ms. Janes retained the residual functional capacity ("RFC") to:

---

[1] The parties were notified of the potentially relevant ruling in *Fox* in a letter order dated January 4, 2016. (ECF No. 18). The letter order provided the Commissioner thirty days to determine whether consent remand was required under *Fox*, or whether she instead wished to file supplemental briefing addressing the apparent *Fox* issue. The Commissioner filed her supplemental brief on January 27, 2016. (ECF No. 20).

*Tracey Ann Janes v. Commissioner, Social Security Administration*
Civil No. SAG-15-1126
May 3, 2016
Page 2

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except
> that, because of her mental impairments, she can perform jobs consisting of only
> unskilled, routine, and repetitive tasks in a work environment with flexible hourly
> quotas and involving only simple, work-related decisions with few, if any,
> workplace changes.

(Tr. 19).  After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Janes could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled.  (Tr. 30-31).

Ms. Janes raises two arguments on appeal.  She first asserts that the ALJ failed to give controlling weight to the opinions of her treating health professionals when analyzing the severity of her affective disorder and RFC.  Pl. Mem. 14.  Ms. Janes also asserts that the ALJ's determination that her mental impairments did not meet or medically equal the Agency's listing of impairments for affective disorders, Listing 12.04, was not supported by substantial evidence. Pl. Mem. 24.  I disagree with both arguments.

## A.  The ALJ Gave Proper Weight to the Opinions of the Health Professionals

In support of her first argument, Ms. Janes outlines her history of mental health treatment with psychiatrists Xiaoping Shao and Sanjeev Singhal, beginning in 2005, along with her regular visits with psychological counselor Stephen Williams, LCSW-C, beginning in 2008.  She argues that the opinions of her treating medical professionals should be given greater weight than that of the Agency's medical professional, Jannifer Hill-Keyes, Ph.D., because Dr. Hill-Keyes "never once laid hands or eyes on Ms. Janes," and based her opinions on "a single occasion in which she reviewed incomplete documentation which did not even include the opinions of Dr. Singhal or Mr. Williams."  Pl. Mem. 16.  According to Ms. Janes, Dr. Singhal's findings that she "had weeks during which she felt irritable, helpless and hopeless followed by a manic state in which she was scattered, forgetful and talking non-stop," that she "had poor insight into her illness," and "had multiple stressors and . . . was depressed and anxious," and that she "needed to be followed closely," are supported by the record, which "as a whole [is] consistent and uncontradicted by any evidence other than the single record review of Dr. Hill-Keyes."  *Id.* at 15, 17.

This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  In making a disability determination, an ALJ evaluates medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.  *See* 20 C.F.R. § 404.1527(c).  The ALJ may accord "greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant."  *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)

*Tracey Ann Janes v. Commissioner, Social Security Administration*
Civil No. SAG-15-1126
May 3, 2016
Page 3

(citations and internal quotation marks omitted).  While this "treating physician rule" generally requires a court to accord greater weight to a treating physician's testimony, the rule does not require that the testimony be given "controlling weight."  *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam).  The treating physician's opinion is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."  *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  "Thus, by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  *Id.* (quoting *Craig*, 76 F.3d at 590) (alterations omitted).

Here, the ALJ accorded "significant weight" to the opinion of Dr. Hill-Keyes, and "little weight" to Dr. Singhal's opinion.  (Tr. 27).  The ALJ's reasoning for this decision accords with the legal standard discussed above.  After providing a detailed account of the inconsistencies between Ms. Janes's subjective assessment of her symptoms and the objective evidence of record, *see* (Tr. 20-26), the ALJ explained that Dr. Singhal's opinion "relied quite heavily on the subjective report of symptoms and limitations provided by [Ms. Janes]," despite the existence of "good reasons for questioning the reliability" of these subjective complaints. (Tr. 27).

For example, in July, 2011, Dr. Singhal opined that Ms. Janes suffered from pressured speech, "[b]ipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes," mood disturbances, manic syndrome, "[e]motional lability, [e]asy distractibility, [h]yperactivity, [i]ntense and unstable interpersonal relationships," and "[i]nvolvement in activities that have a high probability of painful consequences which are not recognized." (Tr. 337-338).  Dr. Singhal further opined that, as a result of these problems, Ms. Janes would have "no useful ability to function" in several unskilled work-related areas, such as regular attendance and punctuality, getting along with co-workers, dealing with normal work stress, and remembering and carrying out tasks. (Tr. 339).  However, the ALJ noted that Ms. Janes testified that she retains the ability to "care for a small child four days a week, do household chores, go shopping, prepare food, volunteer with a youth group for 2-1/2 hours once a week on a consistent basis, and leave town at least three times a year for 3-4 days at a time." (Tr. 22).  Moreover, the ALJ noted that Dr. Singhal's treatment plan with respect to Ms. Janes's mental impairments was "routine and conservative," and was "not consistent with what one would expect if [Ms. Janes] were truly disabled, as [Dr. Singhal] has reported," and that both Dr. Singhal and Stephen Williams, LCSW-C, Ms. Janes's psychological counselor, in addition to Ms. Janes herself, had opined that her impairments are effectively managed by medication.  (Tr. 27, 28).  These inconsistencies, in addition to others cited by the ALJ, provide sufficient justification for the ALJ's decision to accord little weight to Dr. Singhal's opinion.

Importantly, the facts in this case are distinguishable from those in *Morales v. Apfel*, in which the Third Circuit found the ALJ's refusal to credit the claimant's treating physician improper because the ALJ's decision was "not based on objective medical evidence," but, rather, was predicated on the ALJ "simply not believ[ing] [the claimant's] testimony at the hearing" and

*Tracey Ann Janes v. Commissioner, Social Security Administration*
Civil No. SAG-15-1126
May 3, 2016
Page 4

"disregard[ing[ medical opinion based solely on his own amorphous impressions." 225 F.3d 310, 318 (3d Cir. 2000). Unlike *Morales*, in the instant case, the ALJ based his opinion on the evidence of record discussing Ms. Janes's daily activities, the intensity of her symptoms, and her responsiveness to medication and other treatment relative to the longitudinal objective medical evidence. (Tr. 21). In so doing, the ALJ found that Ms. Janes's daily activities are "inconsistent with a disabling level of impairments," given that Ms. Janes testified she cannot work full time, but also admitted that she volunteers with a youth group at a local community center, walks to the store and back, "reads a lot of self-help books," "can work full-time on a good day," completes chores and light cooking, and has provided daycare for her granddaughter. (Tr. 22).

Moreover, the ALJ noted that while Ms. Janes stated that she has not been able to "keep a job for the past twenty-five years due to mental health issues," the record shows that she worked at a level of substantial gainful activity ("SGA") in 1989, 1990, 1992, 1997, 1998, 2000, and 2008, and worked at a level near SGA in 1991, 1994, 2001, and 2007. (Tr. 23). The ALJ also noted that Dr. Singhal's objective medical records post-dating Ms. Janes's alleged onset date are inconsistent with Ms. Janes's subjective assessment of symptom severity, as well as Dr. Singhal's earlier findings of symptom severity pre-dating Ms. Janes's alleged onset date. (Tr. 24-25); *see also Bullock v. Astrue*, No. BPG-09-112, 2010 WL 3060591, at *4 n.5 (D. Md. Aug. 3, 2010) (holding that an ALJ does not err in considering evidence prior to the alleged onset date as less probative of a claimant's condition than evidence after the alleged onset date).

Ms. Janes argues that, in considering her activities of daily living, the ALJ failed to properly consider that her employment has been "transitory and sporadic," and that this inability to sustain employment was not considered in concert with Dr. Singhal's earlier diagnoses of limited mental capabilities and marked limitations. Pl. Mem. 20-21. According to Ms. Janes, "when a claimant has bipolar disorder with fluctuations between manic and depressive states and periods of apparent stability, it is legal error when the ALJ fails to determine whether the claimant could perform work on for [sic] a full workday on a consistent basis and for a significant period of time." *Id.* at 21.

As explained above, however, the ALJ considered the objective medical evidence in concert with and in light of Ms. Janes's employment history and activities of daily living, and expressly determined that Ms. Janes has only mild restriction in activities of daily living and social functioning," but is "unable to sustain detailed or complex work processes during a normal workday and work week." (Tr. 17, 18). Despite these limitations, the ALJ concluded that, in looking at the record as a whole, there was "no functional consequence of [Ms. Janes's] limitation in [the area of concentration, persistence, or pace] beyond an inability to sustain detailed or complex work processes, and, in the instant case, a restriction to jobs consisting of unskilled, routine, and repetitive tasks in a work environment with flexible hourly quotas and involving only simply work-related decisions, with few, if any, workplace changes adequately addresses that restriction." (Tr. 18). I therefore find that the ALJ adequately assessed the record, including Ms. Janes's employment history and social functioning.

*Tracey Ann Janes v. Commissioner, Social Security Administration*
Civil No. SAG-15-1126
May 3, 2016
Page 5

Ms. Janes also argues that the ALJ improperly accorded significant weight to Dr. Hill-Keyes's opinions because Dr. Hill-Keyes "never once laid hands or eyes on Ms. Janes," and based her opinions "on a single occasion in which she reviewed incomplete documentation which did not even include the opinions of Dr. Singhal or Mr. Williams." Pl. Mem. 16. She also asserts that Dr. Hill-Keyes did not review Dr. Singhal's opinion evidence, and did not have the opportunity to review evidence entered into the record after she rendered her opinion. Pl. Br. 11, 20. However, as the Commissioner points out in her motion for summary judgment, this characterization of Dr. Hill-Keyes's opinion and materials consulted is inaccurate. In her December 21, 2011 report, Dr. Hill-Keyes in fact summarized Dr. Singhal's July, 2011 findings, noting that Dr. Singhal reported that Ms. Janes was "probably not sufficient to live independently" and had "functional limitations rated frequent, with reported 4+ extended episodes [of] decompensation." Dr. Hill-Keyes then concluded that Dr. Singhal's opinions were "not consistent with the other evidence in the file," since Ms. Janes "has [medically diagnosed impairments] but maintains the ability to understand, remember and carry out 1-2 step work-like procedures performed routinely with few variables, maintains the ability to maintain adequate concentration and attention within a schedule, with regular, punctual attendance within customary tolerances with minimum limitations, and to sustain an ordinary routine without special supervision." (Tr. 107).

Further, the ALJ did not err in assigning significant weight to Dr. Hill-Keyes's opinions despite Dr. Hill-Keyes not having reviewed the treatment records post-dating her report. As long as the ALJ has the opportunity to review the record as a whole and evaluate whether the State agency expert's opinion is consistent with any subsequent evidence, the ALJ may assign weight to various medical professionals in accordance with the record. *See Adams v. Comm'r, Soc. Sec.*, No. JFM-14-2434, 2015 WL 1778372, at *4 (D. Md. Apr. 16, 2015). In this case, the ALJ reviewed the record in its entirety, making specific note of Dr. Singhal's findings post-dating Dr. Hill-Keyes's report, *see* (Tr. 14-17), and found that Dr. Hill-Keyes's findings of non-severity were consistent with the whole record, including Dr. Singhal's treatment notes from 2012 and 2013. (Tr. 17). Based on the ALJ's thorough review of the medical evidence, and my own review of the ALJ's opinion, I find that the ALJ provided substantial evidence for his findings.

Finally, Ms. Janes argues that the ALJ's conclusion regarding Ms. Janes's RFC is inconsistent with Dr. Singhal's notation that Ms. Janes would be absent from work for about four days per month, and the Vocational Expert's ("VE") consequent statement that there are no jobs in the national or local economy for an individual who would miss more than two days per month from work and is unable to stay on task for at least eighty percent of the workday. (Tr. 86-87, 341). This argument "turns on the ALJ's failure to incorporate the restrictions" contained in Dr. Singhal's opinion. *Lashbaugh v. Comm'r, Soc. Sec. Admin.*, No. SAG-12-1391, 2013 WL 2455992, at *2 (D. Md. June 4, 2013). As noted above, however, the ALJ in the present case properly considered Dr. Singhal's opinion, including Dr. Singhal's July 7, 2011 record which opined that Ms. Janes would be absent from work for "about four days" per month, and found that Dr. Singhal's opinion merited little weight. (Tr. 27-28, 341). Accordingly, the ALJ committed no error.

### B.   The ALJ Properly Determined that Ms. Janes's Impairments Did Not Meet Listing 12.04

Ms. Janes argues that substantial evidence does not support the ALJ's conclusion that her impairments did not meet or medically equal Listing 12.04, "Affective Disorders." Pl. Mem. 24-25. When evaluating the severity of mental impairments at step three of the ALJ's sequential determination, if the ALJ finds that the claimant has medically documented persistence of an objective symptom of an affective disorder, signaling an affective impairment, the ALJ is instructed to rate the degree of functional limitation resulting from a claimant's impairment(s) with respect to the following factors: activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation (the "Paragraph B" factors). *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 at § 12.04. The listing is met if a claimant can show any two of the following: marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, concentration, persistence, or pace, and repeated episodes of decompensation (defined as three episodes within one year, or an average of once every four months, each lasting for at least two weeks). *Id.*

A listing may also be met if the ALJ finds that a claimant meets another set of factors, known as the "Paragraph C" factors; that is, that the claimant has a "medically documented history of chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," and which has led to either repeated episodes of decompensation, each of extended duration, a "residual disease process" that is so strenuous that even a minimal change in mental demands would cause the claimant to decompensate, or inability to function outside of a "highly supportive living arrangement" for more than one year. *Id.*

With respect to both the Paragraph B and C factors, the ALJ found that Ms. Janes had only mild restriction in activities of daily living, mild difficulty in social functioning, and moderate difficulties with concentration, persistence or pace. (Tr. 18). Moreover, the ALJ determined that there was insufficient evidence to make an assessment regarding Ms. Janes's episodes of decompensation. The ALJ expressly stated that, "[a]lthough Dr. Singhal notes that [Ms. Janes] has experienced four plus episodes of repeated decompensation, each of extended duration," there was no objective medical evidence that she had suffered "exacerbations in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two); significant alteration in medication; or need for a more structured psychological support system." (Tr. 18). The ALJ also made note of the State agency expert's April 24, 2012 findings that Ms. Janes had experienced four or more repeated episodes of decompensation, each of extended duration, but found that the record likewise lacked objective evidence for the severity of those episodes, and gave little weight to that expert's finding regarding episodes of decompensation. (Tr. 18 & n.3, 27, 124).

Ms. Janes's argument that the ALJ's findings regarding Listing 12.04 were unsupported by substantial evidence is predicated on her first argument that Dr. Singhal's opinions were

entitled to controlling weight, since Dr. Singhal's reports provide the only evidence of Ms. Janes's marked limitations and episodes of decompensation. As has been discussed, however, the ALJ found that Dr. Singhal's opinions were inconsistent with the total evidence of record, including the evidence speaking to Listing 12.04's Paragraph B and C factors. For example, the ALJ considered Dr. Singhal's opinion that Ms. Janes had experienced multiple episodes of decompensation, but rejected this opinion given the lack of objective evidence that any of the episodes of decompensation post-dated Ms. Janes's alleged onset date. (Tr. 18). My finding that the ALJ properly accorded little weight to Dr. Singhal's opinions is dispositive as to her Listing 12.04 argument.

### C. The ALJ Did Not Properly Consider Ms. Janes's Physical Impairments

In addition to Ms. Janes's arguments, I have also considered the impact of the Fourth Circuit's recent ruling in *Fox v. Colvin*, __ Fed. App'x __, 2015 WL 9204287 (4th Cir. Dec. 17, 2015). In *Fox*, the Fourth Circuit clarified the evidentiary requirements needed to support an ALJ's finding of whether any of a claimant's impairments meets a listing at step three of the sequential evaluation. To understand why remand is warranted, some background is useful. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings describe each of the major body system impairments that the Agency "consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). Listings 1.00 *et. seq.*, through Listings 11.00, *et. seq.*, Listings 13.00 *et. seq.*, and Listings 14.00 *et. seq.*, pertain to physical impairments. Each physical impairment listing contains a set of signs or objective medical findings which must be present for the claimant's impairment to meet the listing.

In *Fox*, regarding his findings at step three of the sequential evaluation, the ALJ stated:

> Although the claimant has 'severe' impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations. (20 CFR, Subpart P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are equivalent to those of any listed impairment of the Listing of Impairments. In reaching this conclusion, the undersigned has considered, in particular, sections 9.00(B)(5) and 11.14.

2015 WL 9204287 at *4. The Fourth Circuit held that the ALJ's analysis was deficient because it consisted of conclusory statements and did not include "any 'specific application of the pertinent legal requirements to the record evidence.'" *Id.* (quoting *Radford v. Colvin*, 734 F.3d 288, 291-92 (4th Cir. 2013)). That is, the ALJ did not apply any findings or medical evidence to the disability listing and "offered nothing to reveal *why* he was making his decision." *Radford*, 734 F.3d at 295 (emphasis in original). The Fourth Circuit also rejected the notion that failure to engage in meaningful analysis at step three could constitute harmless error where the evidence of

*Tracey Ann Janes v. Commissioner, Social Security Administration*
Civil No. SAG-15-1126
May 3, 2016
Page 8

record otherwise demonstrated that the claimant did not meet a listing.  2015 WL 9204287, at *4. Rather, the *Fox* Court emphasized that it is not this Court's role to "engage[] in an analysis that the ALJ should have done in the first instance," or  "to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."  *Id.* at *4-*5.  The Court noted that it could not conduct a meaningful review "when there is nothing on which to base a review."  *Id.* at *4.

Here, as in *Fox*, the ALJ failed to apply the requirements of the relevant listing to the medical evidence in his discussion of Ms. Janes's COPD.  Specifically, the ALJ failed to connect his finding that Ms. Janes suffers from "severe" COPD to Listing 3.02 at all.  In one line of his step three analysis, the ALJ stated that he had "considered" Listing 3.02, but did not provide any discussion of that listing's elements, or of any of the objective medical evidence—or lack thereof—to support his findings that Ms. Janes's COPD did not meet or medically equal Listing 3.02.  (Tr. 17).  The ALJ sporadically noted symptoms of Ms. Janes's COPD throughout his opinion, but failed to explain the role that those symptoms played in any part of his analysis and his ultimate conclusion that Ms. Janes was not disabled.

An ALJ's analysis would be insufficient under *Fox* if it stated a finding of a severe impairment, and coupled that finding with a mere conclusory statement that the impairment did not meet a listing without discussing any of the evidence to support that conclusion.  Here, however, the ALJ did not even make such an attempt.  Instead, the ALJ completely bypassed any conclusion regarding Ms. Janes's COPD and Listing 3.02, stating only in his step three analysis that he had "considered" that listing, and failing to even cursorily conclude that the listing was not met. (Tr. 19).  Moreover, *Fox* and its progeny seem to preclude a "harmless error" analysis by prohibiting a *de novo* review of the record to see whether or not evidence supporting a listing is contained therein.  For these reasons, remand is warranted.

For the reasons set forth herein, Ms. Janes's Motion for Summary Judgment (ECF No. 13) is DENIED, and Defendant's Motion for Summary Judgment (ECF No. 16) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis.  The case is REMANDED for further proceedings in accordance with this opinion.  The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge